UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LaTONYA YOUNG,

                      Plaintiff,           Civil Action No. 19-12129
                                            Honorable Paul D. Borman
v.                                   Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                      Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16, 17)

Plaintiff LaTonya Young ("Young") brings this action pursuant to 42 U.S.C. §

405(g), challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under

the Social Security Act (the "Act").  Both parties have filed summary judgment motions

(ECF Nos. 16, 17), which have been referred to this Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports

the Administrative Law Judge's ("ALJ") conclusion that Young is not disabled under the

Act.  Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for

Summary Judgment **(ECF No. 17)** be **GRANTED**, Young's Motion for Summary

Judgment **(ECF No. 16)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Young was 43 years old at the time of her alleged onset date of July 3, 2015, and at 5'6" tall weighed approximately 250 pounds during the relevant time period. (Tr. 100, 247, 252). She completed high school and some technical school. (Tr. 47, 253). Previously, she worked as a housekeeper, but she stopped working in April 2015 because of her medical condition. (Tr. 45-46, 252, 253). She now alleges disability primarily as a result of migraines, arthritis, depression, high blood pressure, anemia, asthma, and sleep apnea. (Tr. 55, 252).

After Young's application for DIB was denied at the initial level on April 28, 2016 (Tr. 122-25), she timely requested an administrative hearing, which was held on March 8, 2018, before ALJ Timothy Christensen (Tr. 40-66).[1] Young, who was represented by attorney Ronald Glotta, testified at the hearing, as did vocational expert ("VE") Erin O'Callaghan and Young's Case Manager, Erin Starr. (*Id.*). On August 1, 2018, the ALJ issued a written decision finding that Young is not disabled under the Act. (Tr. 17-33). On June 17, 2019, the Appeals Council denied review. (Tr. 1-6). Young timely filed for judicial review of the final decision on July 22, 2019. (ECF No. 1).

---

[1] Previously, on July 2, 2015, ALJ Beth Contorer issued a written decision finding that Young was not disabled under the Act. (Tr. 85-95). Thus, ALJ Christensen considered Young's disability application beginning July 3, 2015, the day after the prior decision. (Tr. 18).

The Court has thoroughly reviewed the transcript in this matter, including Young's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.      The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at \*7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Young is not disabled under the Act.  At Step One, the ALJ found that Young has not engaged in substantial gainful activity since July 3, 2015 (the alleged onset date).  (Tr. 20).  At Step Two, the ALJ found that she has the severe impairments of status post decompression of Chiari malformation, status post aneurysm clipping, right frontotemporal craniotomy, headaches, hypertension, obesity, anemia, asthma, degenerative disc disease, diabetes, status post ankle surgery, degenerative joint disease right knee, obstructive sleep apnea, major depression recurrent, borderline personality disorder and rule out cognitive deficits related to brain surgeries.  (Tr. 21).  At Step Three, the ALJ found that Young's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*).

4

The ALJ then assessed Young's residual functional capacity ("RFC"), concluding

that she is capable of performing sedentary work, with the following additional limitations:

would require a sit/stand option where she could sit for up to 30 minutes and stand for up

to 30 minutes, but would have to get up to change positions and move around, but by doing

so would be off task less than 10% of any given work day; should never climb ladders,

ropes, or scaffolds and only occasionally climb stairs, ramps, balance, and crawl; can

occasionally crouch, kneel, and stoop; should avoid hazards, such as heights, and extremes

in temperatures and humidity; should avoid even moderate exposure to respiratory irritants;

capable of understanding, remembering, and executing work commensurate with

"unskilled work" – that being specific vocational preparation ("SVP") level 1 or 2 – which

could be learned by demonstration or in 30 days or less; no production rate quotas; and

only occasional changes in the work setting.  (Tr. 23).

At Step Four, the ALJ found that Young is unable to perform any of her past relevant

work.  (Tr. 31).  At Step Five, the ALJ determined, based in part on testimony provided by

the VE in response to hypothetical questions, that Young is capable of performing the jobs

of sorter (100,000 jobs nationally) and bench assembler (200,000 jobs).  (Tr. 32).  As a

result, the ALJ concluded that Young is not disabled under the Act.  (*Id.*).

**C.    Standard of Review**

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute

is limited in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard or has

made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

In her motion for summary judgment, Young primarily argues that the ALJ erred

in: (1) failing to consider all of her impairments, both individually and in combination; (2)

discounting the June 2017 opinion of her treating psychiatrist, Dr. Hanson; and (3) failing

to consider the September 2016 opinion of her treating podiatrist, Dr. Kezelian.  (ECF No.

16, PageID.1052-1067).  Each of these arguments is addressed below.

> *1.     The ALJ Properly Considered Young's*
> *Impairments, Individually and in Combination*

As the ALJ recognized, Young has several severe impairments – both mental and

physical.  (Tr. 21).  The ALJ also found that Young has a very restrictive RFC, in that she

is limited to sedentary, unskilled work that provides a sit/stand option (along with

numerous additional limitations).  (Tr. 22-23).  In her motion, Young argues that the ALJ

overlooked certain impairments (such as herniated discs in her back and neck and obesity)

and failed to consider the impact of all of these conditions on her ability to work on a

"sustained" basis.[2]  (ECF No. 16, PageID.1053-54).  These arguments are without merit.

First, Young points out that she "suffered herniated discs in the lumbar and cervical

regions" of her spine, implying that the ALJ failed to consider the significance of these

conditions.  (*Id.*, PageID.1053).  It is true that a June 8, 2017 MRI of Young's lumbar spine

---

[2] To the extent Young asserts in passing that the ALJ failed to consider her ability to work on a
"sustained" basis (ECF No. 16, PageID.1054), this issue is waived, as she presents no reasonably
developed argument on the issue.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)
("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed
argumentation, are deemed waived.").  Regardless, the Sixth Circuit has summarily rejected such
an argument where, as here (Tr. 22-23), "[t]he ALJ fully specified [the claimant's] exertional and
nonexertional abilities." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

showed central disc herniation at L5-S1, without spinal stenosis or nerve root compression;

bilateral neural foramen narrowing at L4-L5 and L5-S1, without definite compression of

the exiting nerve roots; and facet osteoarthritis at L4-L5 and L5-S1.  (Tr. 626-27).

Similarly, x-rays of Young's cervical spine, taken on April 21, 2017, showed mild

degenerative disc disease.  (Tr. 702).  And, a follow-up MRI of Young's cervical spine

performed on May 7, 2017, showed central and right lateral disc herniation at C5-C6, but

no neural foraminal narrowing, no central canal stenosis, no cervical cord compression,

and no signal change in the cervical spinal cord.  (Tr. 707-08).  The ALJ explicitly

considered these x-ray and MRI results (Tr. 25), and, indeed, along with "status post ankle

surgery" and "degenerative joint disease right knee," specifically found Young's

"degenerative disc disease" to be a severe impairment at Step Two of the sequential

analysis (Tr. 21).  Thus, Young's disc abnormalities were properly considered.[3]

Young next argues that, while the ALJ recognized that she suffers from obesity, she

failed to consider how this condition would "of necessity increase [her] symptomatology

and therefore confirm the severity of [her] disability."  (ECF No. 16, PageID.1054-55)

---

[3] Young argues that the "addition of disc herniations is objective evidence that confirms the validity" of her subjective allegations of disability. (ECF No. 16, PageID.1053).  Although Young does not specifically challenge the ALJ's evaluation of her subjective symptoms, it bears mentioning that the ALJ's conclusion that Young's subjective symptoms were "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 26) is supported by substantial evidence.  Specifically, the ALJ considered Young's significant activities of daily living (Tr. 22, 26) and the fact that she often stated that she was able to work during the period she claimed to be disabled (Tr. 26) in evaluating her subjective symptoms, which was entirely proper. *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *6-8 (October 25, 2017).

(citing Social Security Ruling ("SSR") 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002)).[4]

This argument also lacks merit.  The ALJ specifically found Young's obesity to be a severe

impairment (Tr. 21), considered its effects within the listings analysis at Step Three (*id.*),

considered it again in combination with her other severe impairments in formulating her

RFC (Tr. 24), and accepted Young's argument that her "obesity aggravates her chronic

pain in the right knee and right ankle" (Tr. 25).  As the Sixth Circuit has explained, nothing

more was required.  *See Thomas v. Comm'r of Soc. Sec.,* No. 19-10268, 2020 WL 521891,

at *13 (E.D. Mich. Jan. 14, 2020) ("The Sixth Circuit has opined that SSR 02-01p 'only

states that obesity, in combination with other impairments, 'may' increase the severity of

the other limitations.  It is a mischaracterization to suggest that Social Security Ruling 02-

01p offers any particular procedural mode of analysis for obese disability claimants.'")

(quoting *Bledsoe v. Barnhart,* 165 F. App'x 408, 412 (6th Cir. 2006)); *see also Coldiron

v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010).

Finally, there is no merit to Young's argument that the ALJ "attempt[ed] to

accommodate [her] impairments individually" but failed to consider them in combination.

(ECF No. 16, PageID.1054, 1056).  In fact, the ALJ repeatedly considered her impairments

in "combination" at Step Three (Tr. 21) and within the RFC discussion (Tr. 23, 24, 26).

The ALJ also explained that the RFC conclusion was based on "careful consideration of

the entire record" (Tr. 22) and "all symptoms" (Tr. 23).  The Sixth Circuit has held that

---

[4] SSR 02-1p was in effect at the time of the ALJ's August 2018 decision and, thus, remains applicable on judicial review.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (retroactivity is not favored in the law).

this sufficiently shows that the ALJ properly considered a claimant's impairments in combination. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020).

2.       *Young Has Identified No Error in the ALJ's Evaluation of the Medical Opinion Evidence*

Young also raises various challenges to the ALJ's evaluation of three medical opinions: (1) the June 2017 opinion of her treating psychiatrist, Dr. Hanson; (2) the October 2017 opinion of the consultative psychological examiner, Dr. Daldin; and (3) the September 2016 opinion of her treating podiatrist, Dr. Kezelian.[5]   (ECF No. 16, PageID.1056-1066).  Each of these arguments is addressed below.

a.       *Dr. Hanson*

By way of background regarding Young's mental impairments, Young was admitted to the Crisis Center at the Detroit Medical Center on June 2, 2015, after she attempted suicide by taking ten over-the-counter sleeping pills, four Motrin, and drinking a glass of wine.  (Tr. 366).  Her Global Assessment of Functioning ("GAF")[6] score at the time was 45, but it was determined that she did not meet the criteria for inpatient admission, and she was discharged home with prescriptions for Zoloft and Benadryl.  (Tr. 370). Subsequently, she attended a "crisis stabilization program" from November 3, 2015 to

---

[5] Young does not challenge the ALJ's assignment of significant weight to the April 2016 opinion of state agency reviewing psychologist Joseph Edwards, Ph.D., who opined that she can carry out one- to three-step tasks without strict time or production demands, as long as major changes are explained in advance.  (Tr. 27 (citing Tr. 110-11)).  Young also does not argue that there is any significant difference between Dr. Edwards' opinion and the ALJ's mental RFC finding.

[6] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

December 2, 2015 through Macomb County Community Mental Health.  (Tr. 404-81).  At the initial intake, and at subsequent visits, she was consistently diagnosed with major depressive disorder, and her GAF score was repeatedly 55.   (*E.g.,* Tr. 433-34). Subsequently, she continued to receive case management services (primarily from Erin Starr) and medication management services (primarily through psychiatrists John Baugh and Neelam Verma) through early 2017.[7] (Tr. 555-600, 771-93, 803-39).  Throughout this time, her diagnosis and GAF score remained the same.  (*Id.*).  In May 2016, she reported sleeping better, being able to deal with her pain better, and was "bright and cheerful."  (Tr. 828, 832).  The treatment notes reflect that Young was looking for work (Tr. 822, 838) and was regularly found to be properly oriented, with normal speech, thought process (when recorded)[8], and attention and concentration (Tr. 806, 812, 819, 825, 831, 837).   She regularly denied any medication side effects.  (Tr. 815, 822, 828, 834).  At the conclusion of most of her appointments, Young was instructed to return eight weeks later.

From the record, it appears that the first time Young saw Sylvia Hanson, M.D. was for a medication review on April 6, 2017.  (Tr. 764-70).  At that time, Young reported that she was "doing ok" and indicated she was taking care of her son and taking online classes. (Tr. 764).  She denied suicidal ideation; her speech was normal; her mood was euthymic with appropriate affect and normal thought process, insight, and judgment.  (Tr. 767-68).

---

[7] In her motion, Young asserts that Dr. Hanson treated her "from September 2015 to February 2018[.]"  (ECF No. 16, PageID.1058).  However, Young provides no citation to the record in support of this assertion, and it is not borne out by the evidence.

[8] For some of Young's visits, no boxes were checked in the "Thought Process" category.  (*E.g.,* Tr. 819, 825).  However, in those instances, Young was regularly found to have an appropriate affect and/or no issues with her "Thought Content."  (*E.g.,* Tr. 807, 813, 819, 825-26).

Her diagnoses were major depressive disorder and anxiety disorder, and her GAF score was 55. (Tr. 769). In summary, Dr. Hanson noted that Young's depression was "much improved," and Young said her "meds are working well & she wants to continue same [without] changes." (Tr. 770).

At her next medication review with Dr. Hanson, on June 29, 2017, Young reported that she was doing all right mentally, but still struggling with chronic pain issues. (Tr. 750). She described both her anxiety and depression as only 2/10 (with 10 being the worst), and again her mental status examination was almost entirely normal. (Tr. 750, 754-55). Her diagnoses and GAF score remained the same, and the current treatment plan and medication regimen were continued. (Tr. 755-56).

That same day, however, Dr. Hanson completed a Mental Residual Functional Capacity Assessment in which she opined that Young was markedly limited in numerous areas, including the ability to remember locations and work-like procedures; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and work week without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 628-29). In the "Functional Capacity Assessment" portion of the form, Dr. Hanson wrote:

> [Young] reports recurrent depression impact on ability to function on

12

> the job or at home.  She also experiences good days and bad days.  She has concentration and memory difficulties, which affect her functioning in major areas.  She also gets irritated easily and everyone gets on her nerves when depressed.  She is unable to work gainfully due to recurrent major depression and sequele [sic] (noted above).

(Tr. 630).

In her motion, Young argues that the ALJ violated the treating physician rule when he failed to give controlling weight to Dr. Hanson's opinion.  (ECF No. 16, PageID.1059-65).  The treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)).  "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'"  *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'"  *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)).

Here, the ALJ considered Dr. Hanson's opinion, saying:

> [Young] reported to the consultative examiner [Dr. Daldin] and [she] testified that she is not currently receiving mental health treatment with the exception of seeing Dr. Hanson once a month for medication

[]. [Young] testified and told the consultative examiner that she receives peer support at Macomb County Community Mental Health. Thus, Dr. Hanson is unable to provide any type of treatment or counseling records to support this opinion other than medication records. Therefore, the undersigned assigns little weight to this treating source opinion.

(Tr. 29). As set forth above, the reasons articulated by the ALJ for discounting Dr. Hanson's opinion find support in the record. Specifically, Dr. Hanson performed mental status examinations on Young only three times, between April and June 2017, and, as the ALJ noted, the findings in those examinations did not support disabling limitations. The ALJ further explained:

> … [Young's] most recent mental status examination dated June 29, 2017 by Dr. Hanson showed [she] was oriented to person, place and time. In addition, Dr. Hanson reported [Young's] speech rate/rhythm, language and volume were all normal. Dr. Hanson described [Young's] mood as euthymic and her affect as appropriate. Dr. Hanson considered that [Young's] thought process was normal and her thought content was devoid of hallucinations, paranoia, or delusion. Both [her] insight and judgment were noted to be normal. While it was reported that she had impaired long-term memory, her fund of knowledge showed she was aware of current events. Her attention span and concentration were found to be fair and her associations were considered intact. Dr. Hanson noted [Young's] depression and anxiety symptoms showed "improvement"; [her] level of functioning was considered "adequate"; and she "vehemently denie[d]" current suicidal and homicidal thinking, planning intent.

(Tr. 30-31) (citations omitted).[9]  Thus, the ALJ's discussion of Dr. Hanson's opinion[10]

---

[9] As discussed above, Dr. Hanson's other two mental status examinations of Young revealed virtually identical findings. (Tr. 761-63, 768-70).

[10] It would have been preferable had the ALJ provided this discussion in the earlier portion of his decision that specifically dealt with the weight being given to Dr. Hanson's opinions. However, this later analysis by the ALJ is entirely consistent with his finding that "Dr. Hanson is unable to provide any type of treatment or counseling records to support this opinion other than medication records." Because a full reading of the ALJ's decision makes clear why he assigned little weight

14

makes clear that the disabling mental limitations to which she opined were neither "supported by sufficient clinical findings" nor "consistent with the evidence." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (internal quotations omitted).  For these reasons, the Court finds no error in the ALJ's evaluation of Dr. Hanson's opinion.[11]

    b.  *Dr. Daldin*

Young next argues that the ALJ erred in giving significant weight to the opinion of the consultative examiner, Herman Daldin, Ph.D., who saw Young on October 12, 2017, and opined that she had only mild limitations in performing simple work tasks and no limitations in interacting with others.  (ECF No. 16, PageID.1057-58; Tr. 636-37).  The ALJ noted that the opinion was supported by Dr. Daldin's extensive examination, his consideration of Young's brain surgeries in 2013 and 2014 (prior to the alleged onset date), and the fact that Young reported receiving no mental health treatment other than "peer support" and seeing a psychiatrist for medication once a month.  (Tr. 30).  Thus, in weighing Dr. Daldin's opinion, the ALJ relied on Dr. Daldin's examining relationship with

---

to Dr. Hanson's opinions, and because that reasoning is supported by substantial evidence in the record, the ALJ satisfied his obligation with respect to the treating physician rule.

[11] Young's case manager, Erin Starr, who worked in the same office as Dr. Hanson, testified at the administrative hearing that she met with Young between weekly and monthly "to check in, monitor her symptoms, how she's feeling, monitoring that she's following through with her medical appointments …." (Tr. 59).  Young challenges the ALJ's decision to give little weight to Ms. Starr's testimony, asserting that since she "testified to the continuation [of] psychiatric treatment … there can be no more clear basis for reversal for payment [of benefits]." (ECF No. 16, PageID.1063-64).  As the Commissioner correctly points out, however, "Ms. Starr was an 'other source' rather than an 'acceptable medical source' under Social Security law," and, thus, "any opinion she offered was 'not entitled to any special deference.'" (ECF No. 17, PageID.1097) (citing *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014)).  Moreover, a claimant's mere receipt of treatment for a particular impairment does not necessarily mean she is disabled, but rather is a factor to be taken into account by the ALJ in determining her RFC.

Young, the evidence supporting his opinion, and the opinion's consistency with the remainder of the record, all of which were appropriate considerations. *See* 20 C.F.R. § 404.1527(c).

In challenging the ALJ's evaluation of Dr. Daldin's opinion, Young makes an unusual argument – namely, that the ALJ had no choice but to give the same weight to Dr. Daldin's October 2017 opinion (because he saw her only one time) as he did to Young's one-time GAF score of 45 on June 2, 2015. (ECF No. 16, PageID.1057-58). Specifically, Young asserts that "Dr. Daldin's opinion represents 'a <u>clinician's subjective evaluation at a single point of time</u>,'" the very reason that [the] ALJ discounted [Young's] low GAF score[]." (*Id.*, PageID.1058) (emphasis in original). This argument is without merit.

As the ALJ noted, Young's GAF score of 45 was associated with a one-time episode of suicidal ideation, and her hearing "testimony provides support that she no longer has suicidal ideations." (Tr. 27, 50, 370).[12] The ALJ also found it significant that, even during that one-time episode, Young did not meet the criteria for inpatient admission; "there was 'no evidence of any significant and acute mental illness which can deteriorate [her] condition at this time'"; and the provider "did 'not expect any material deterioration or exacerbation of [her] symptomology with [her] discharge.'" (Tr. 27 (quoting 370)). Thus, although a GAF score of 45 is associated with "serious symptoms or any serious impairment in social, occupation, or school functioning" (Tr. 27), the ALJ effectively discounted it because disabling limitations were not suggested by the report in which it was

---

[12] Similarly, at her later treatment sessions, Young regularly denied any suicidal ideations. (Tr. 805, 811, 818, 824, 829).

found, and because it was not consistent with the longitudinal evidence of record.  *See* 20 C.F.R. § 404.1527(c)(4).  Thus, the Court is not persuaded by Young's argument that the ALJ was required to reject Dr. Daldin's opinion, as he did her GAF score of 45, simply because both assessments were associated with one-time examinations.

<em>c.      Dr. Kezelian</em>

Finally, Young challenges the ALJ's evaluation of the opinions of her treating podiatrist, Dr. Harry Kezelian.  (ECF No. 16, PageID.1065-66).  Dr. Kezelian offered three opinions.  The ALJ gave "significant weight" to his December 2016 and April 2017 opinions, which both stated that Young "will have a hard time standing eight hours a day." (Tr. 28, 660, 661).  These opinions are consistent with the ALJ's conclusion that Young can perform a range of sedentary work, with the option to alternate between sitting and standing at least every thirty minutes (Tr. 22-23), and Young does not argue otherwise.

Rather, Young now points to a third opinion from Dr. Kezelian, dated September 17, 2016, which states that Young is limited to lifting less than five pounds (and even then only "rarely"), and would miss one to two days of work per month due to impairments or treatment.  (ECF No. 16, PageID.1065; ECF No. 16-1).  Young claims this opinion "was submitted to the ALJ" (ECF No. 16, PageID.1065), but the page she cites in support of this assertion is merely a page in her attorney's statement to the Appeals Council indicating that this opinion "[a]pparently … was not exhibited" (Tr. 334).  Young provides no evidence that she submitted this opinion to the agency before the ALJ issued his decision on August 1, 2018; and, in fact, the agency's records show that it was submitted on September 2, 2018, while the case was pending before the Appeals Council.  (Tr. 77-81;

17

ECF No. 17-1, PageID.1103).  Although Young blames the "negligence of the ALJ" on the fact that this opinion was not included in the record sooner, the law is clear that the "ALJ did not have a special duty to develop the record because [Young] was represented by counsel."  *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013).  Thus, Young has demonstrated no error warranting remand.

In sum, Ms. Young's case is a challenging one.  She had a good work history and unfortunately, as the ALJ recognized, suffers from numerous serious impairments. However, this Court's role is narrow and circumscribed, and it must affirm the ALJ's decision if it is supported by substantial evidence in the record, "even if [this Court] would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip*, 25 F.3d at 286.  For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, that decision must be affirmed.

## III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 17)** be **GRANTED**, Young's Motion for Summary Judgment **(ECF No. 16)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.


Dated: September 28, 2020                          s/David R. Grand
Ann Arbor, Michigan                                DAVID R. GRAND
                                                   United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 28, 2020.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
